UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JOSHUA B.,

             Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

             Defendant.

CASE NO. 3:23-CV-5391-DWC

ORDER REVERSING AND
REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS

Plaintiff filed this action under 42 U.S.C. § 405(g) seeking judicial review of Defendant's denial of his applications for supplemental security income benefits ("SSI") and disability insurance benefits ("DIB").[1] After considering the record, the Court concludes the Administrative Law Judge ("ALJ") erred in his evaluation of Plaintiff's subjective symptom testimony. Had the ALJ properly addressed Plaintiff's testimony, he may have included additional limitations in Plaintiff's residual functional capacity ("RFC") or reached a different

---

[1] Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. *See* Dkt. 2.

1  conclusion regarding disability. The ALJ's error is, therefore, not harmless, and this matter is

2  reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner of

3  Social Security ("Commissioner") for further proceedings consistent with this Order.

4  **I.  Factual and Procedural History**

5  Plaintiff filed claims for DIB and SSI in July 2020, alleging disability beginning August

6  28, 2014. Dkt. 10, Administrative Record ("AR") 254, 260. His applications were denied at the

7  initial level and on reconsideration. AR 65–66, 125–26. He requested a hearing before an ALJ,

8  which took place on January 25, 2022. AR 35–64, 150. Plaintiff was represented by counsel at

9  the hearing. *See* AR 35.

10  The ALJ issued an unfavorable decision denying benefits on February 11, 2022. AR 13–

11  34. In his written decision, the ALJ found Plaintiff had the severe impairments of degenerative

12  disc disease of the lumbar spine and right knee osteoarthritis. AR 19. He determined Plaintiff had

13  the RFC to perform sedentary work with certain additional limitations:

14  [H]e is further limited to no more than occasional balancing, stooping, crouching, crawling, kneeling, or climbing of ramps and stairs. The claimant would be
15  precluded from climbing ropes, ladders, or scaffolds, and would need to avoid concentrated exposure to unprotected heights, moving machinery, and similar
16  hazards. The claimant should avoid walking on grass and on uneven surfaces.

17  AR 20. The ALJ found Plaintiff was unable to perform his heavy past relevant work as a pipe

18  fitter. AR 26–27. However, based on the testimony of the vocational expert, the ALJ determined

19  there were other jobs existing in significant numbers in the national economy that Plaintiff could

20  perform. AR 27–28.

21  The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the

22  final decision of the Commissioner. AR 1–6. Plaintiff appealed to this Court. *See* Dkts. 1, 4.

23

24

1    **II.      Standard of Review**

2         When reviewing the Commissioner's final decision under 42 U.S.C. § 405(g), this Court

3    may set aside the denial of social security benefits if the ALJ's findings are based on legal error

4    or are not supported by substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211,

5    1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). Substantial

6    evidence "is a highly deferential standard of review[.]" *Valentine v. Comm'r of Soc. Sec. Admin.*,

7    574 F.3d 685, 690 (9th Cir. 2009). Evidence is "substantial" when it is "more than a mere

8    scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019). "It means—and means only—such

9    relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

10    (cleaned up).

11         "[T]he ALJ 'is responsible for determining credibility, resolving conflicts in medical

12    testimony, and for resolving ambiguities.'" *Ford v. Saul*, 950 F.3d 1141, 1149 (9th Cir. 2020)

13    (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). Accordingly, "[e]ven if the

14    evidence is 'susceptible to more than one rational interpretation, it is the ALJ's conclusion that

15    must be upheld.'" *Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022) (quoting *Burch v.*

16    *Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)). However, ALJs must "set forth the reasoning

17    behind [their] decisions in a way that allows for meaningful review." *Brown-Hunter v. Colvin*,

18    806 F.3d 487, 492 (9th Cir. 2015). "A clear statement of the agency's reasoning is necessary

19    because [the Court] can affirm the agency's decision to deny benefits only on the grounds

20    invoked by the agency." *Id.*

21         "[H]armless error principles apply in the Social Security Act context." *Molina v. Astrue*,

22    674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 404.1502(a).

23    Generally, an error is harmless if it is not prejudicial to the claimant and is "inconsequential to

24

1    the ultimate nondisability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050,

2    1055 (9th Cir. 2006); *see also Molina*, 674 F.3d at 1115.

3    **III.    Discussion**

4        Plaintiff contends the ALJ erred in discounting his subjective symptom testimony,

5    evaluating the medical evidence, and formulating his RFC. Dkt. 15 at 1.

6        A.    Subjective Symptom Testimony

7        Plaintiff argues the ALJ supplied insufficient reasons for rejecting Plaintiff's testimony

8    about the severity of his symptoms. *Id.* at 7.

9            1.    *Subjective Symptom Testimony Standard*

10       "An ALJ engages in a two-step analysis to determine whether a claimant's testimony

11   regarding subjective pain or symptoms is credible." *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th

12   Cir. 2014). At the first step, the ALJ determines whether the claimant has presented objective

13   medical evidence of an underlying impairment that could reasonably be expected to produce the

14   pain or other symptoms alleged. *Id.* This evidence need not validate the severity of the alleged

15   symptoms; rather, "the medical evidence need only establish that the impairment could

16   reasonably be expected to cause some degree of the alleged symptoms." *Smith v. Kijakazi*, 14

17   F.4th 1108, 1111 (9th Cir. 2021).

18       If the claimant satisfies this first step and there is no affirmative evidence of malingering,

19   "the ALJ can reject the claimant's testimony about the severity of [their] symptoms only by

20   offering specific, clear and convincing reasons for doing so." *Id.* at 1112 (quoting *Garrison*, 759

21   F.3d at 1014–15). "This standard is 'the most demanding required in Social Security cases.'" *Id.*

22   (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). To meet this

23

24

1 standard, ALJs must "identify which testimony [they] found not credible and why." *Brown-*

2 *Hunter*, 806 F.3d at 489.

3      The Ninth Circuit has reaffirmed that the clear and convincing standard requires the ALJ

4 to make "specific finding[s]:"

5      [A]n ALJ does not provide specific, clear, and convincing reasons for rejecting a
       claimant's testimony by simply reciting the medical evidence in support of his or
6      her residual functional capacity determination. To ensure that our review of the
       ALJ's credibility determination is meaningful, and that the claimant's testimony is
7      not rejected arbitrarily, we require the ALJ to specify which testimony she finds
       not credible, and then provide clear and convincing reasons, supported by evidence
8      in the record, to support that credibility determination.

9 *Smith*, 14 F.4th at 1112 (quoting *Brown-Hunter*, 806 F.3d at 489). "The standard isn't whether

10 our court is convinced, but instead whether the ALJ's rationale is clear enough that it has the

11 power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022). As with all findings by

12 the ALJ, the specific, clear, and convincing reasons also must be supported by substantial

13 evidence in the record as a whole. 42 U.S.C. § 405(g).  *see also Bayliss*, 427 F.3d at 1214 n.1

14 (citing *Tidwell*, 161 F.3d at 601).

15                    2.  *Plaintiff's Testimony*

16      Plaintiff completed two function reports dated August 10, 2020, and May 25, 2021,

17 which contain largely similar information. AR 291, 298, 323, 330. He stated he was in constant

18 pain throughout the day, leading to fatigue, and experienced ongoing numbness in his left leg.

19 AR 291, 323. Plaintiff indicated he could not sit or stand for long periods of time, bend, stoop,

20 kneel, climb, crawl, lift heavy objects, or perform repetitive motions. AR 291, 323. He stated he

21 could walk for about five to ten minutes before needing to rest for five or more minutes, and he

22 struggled with his knees giving out when he walked. AR 296, 328. He described alternating

23 between sitting, standing, and lying down throughout the day to manage his pain. AR 292, 324.

24

Plaintiff indicated difficulties with personal care including dressing, washing the lower part of his body, and sitting and wiping when using the toilet. AR 292, 324. He described trouble completing tasks and concentrating due to pain and stated he could not sleep for more than four hours at a time. AR 292, 296, 323–34, 328.

Plaintiff stated he helped take care of his three small children, but their mother did the majority of the childcare. AR 292, 324. He indicated he prepared meals daily but was unable to perform most other household chores due to pain and physical limitations. AR 293, 325. In the first function report, he stated he could perform "very light" cleaning that did not involve kneeling, bending, crawling, or stooping, but stated the children's mother did the "huge majority" of the cleaning. AR 293. In the second function report, he stated he could not do any household chores and his significant other performed all of these tasks. AR 325. Plaintiff stated he went outside daily and was able to drive and go places by himself, specifying that he visited his mother one to two times per week. AR 294–95, 326. Although he initially indicated he was able to shop for food, he stated his partner did all the shopping. AR 294, 326.

In the second function report, Plaintiff stated that his pain was getting worse and he was losing strength and range of motion, especially from the waist down, and listed kidney pain as a side effect of naproxen. AR 330.

At the hearing on January 25, 2022, the ALJ asked Plaintiff about his alleged onset date of August 28, 2014. AR 43. The ALJ noted that Plaintiff injured his left knee at work around that time, but the injury appeared to have resolved by January 2015. AR 43–44. Plaintiff explained that he experienced severe pain in his knees and back before sustaining the workplace injury, but he had attributed the ongoing pain to his heavy work as a pipe fitter. AR 44–45. Plaintiff testified he had injured his right knee in a motorcycle accident in 2000. AR 51. The severed ACL and

1   meniscus were repaired, but his knee continued to bother him. *Id.* After the injury to his left

2   knee, he was not working but was still experiencing pain, so he sought treatment. AR 45. When

3   Plaintiff sought treatment for the workplace injury to his left knee, he reported the ongoing pain

4   in his right knee and back but was told his provider was only able to treat the workplace injury

5   because of workers' compensation restrictions. AR 50–52.

6       After Plaintiff stopped working in 2014, he had no health insurance coverage. AR 52. He

7   testified that he did not seek treatment during that time because "life at the time was kind of a

8   little bit chaotic" and he was "trying to keep a roof over our head." AR 53. He was not looking

9   for work during that time because he believed he was not able to work full-time. *Id.* Plaintiff

10   testified he had thought about trying to find a lighter, more sedentary job but could not think of

11   any job he could perform full-time based on his conditions. AR 45–46.

12       At the hearing, Plaintiff testified his doctors recommended a full knee replacement of his

13   right knee, but that had not yet taken place. AR 46. He stated he did physical therapy two days a

14   week, which helped a little bit during a session, but the pain and numbness returned after the

15   session. AR 46–47. Plaintiff testified he did not take the prescribed pain medication because it

16   was not effective at relieving his pain. AR 47. He stated the prescribed Flexeril was helpful when

17   his muscles and ligaments were stiff. AR 48. He stated he takes anti-inflammatory medication

18   every day but is still in pain. *Id.*

19       Plaintiff testified he was not able to do household chores that required lifting or bending.

20   AR 49. He stated he was able to help with cooking dinner a "do a little" around the house. *Id.* He

21   stated he was not able to carry his young children. *Id.* He stated he drove to visit his mother once

22   or twice a week. AR 49–50. He stated he did not do any other activities outside the house except

23   "[t]ake a walk in the park now and again[.]" AR 50.

24

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 7

1    Counsel asked Plaintiff to describe what he did during the day to manage his pain. AR

2    53–54. Plaintiff testified his "pain doesn't really get managed." AR 54. He testified he does not

3    sleep for more than four hours at a time. *Id.* He stated his sleep had been disturbed like this since

4    he stopped working because when he worked, he would be so exhausted that he could sleep

5    despite the pain. *Id.* Plaintiff testified he spent a lot of the day lying down with heat on his back

6    and buttocks. *Id.* He stated he pretty much stayed in the house all day and alternated between

7    sitting and lying down. *Id.*

8    Plaintiff also described constant numbness in his left leg. AR 54–55. He stated he could

9    sometimes relieve the numbness by standing but usually needed to lie down to relieve the

10   numbness. AR 55. Standing or sitting for long periods of time made the numbness worse. *Id.*

11   Plaintiff testified he told his provider about the numbness, but it had gotten worse to the point

12   where it was now constant. *Id.*

13                    3.  *ALJ's Findings*

14   The ALJ found Plaintiff's medically determinable impairments could reasonably be

15   expected to cause his alleged symptoms. AR 21. However, he found Plaintiff's statements

16   concerning the intensity, persistence, and limiting effects of his symptoms were not entirely

17   consistent with the medical evidence and other evidence in the record. *Id.* The ALJ gave three

18   primary reasons for this conclusion: (1) Plaintiff's activities in his daily life indicated that his

19   symptoms were not as limiting as he alleged, (2) Plaintiff's testimony was inconsistent with

20   clinical findings, and (3) Plaintiff's conditions were managed with conservative treatment. *Id.*

21                    a.  Activities of Daily Living

22   The ALJ found that Plaintiff's written accounts of his functioning in the two function

23   reports did not support finding greater limitations consistent with his testimony about the

24

intensity, persistence, and limiting effects of his symptoms. *Id.* The ALJ explained his reasoning as follows:

> [Plaintiff] reported that he has constant pain throughout the day which leads to fatigue, and that he cannot sit or stand for long periods, bend, stoop, knee [sic], climb, crawl, lift heavy objects, or do repetitive motions. The claimant reported he can walk five to ten minutes before needing to rest, he can resume walking after five minutes, and he cannot sit for long because of pain. He also related that he has difficulty putting on pants, socks, shoes, and underwear; washing the lower part of his body; and toileting. However, he helps care for his three young children and indicated that he can lift up to 25 pounds. He prepares three home-cooked meals daily, taking 20 to 30 minutes for each meal. He does basic household cleaning that does not involved kneeling, bending, crawling, or stooping. The claimant indicated that he goes outside daily, he drives or rides in a car, and he can go out alone. He also related that he chops [sic] in stores for food, albeit rarely. Consistent with his testimony, the claimant indicated that he visits his mother one to two times a week (Exhibits 3E and 8E). The nature and frequency of these reported activities are not consistent with the degree of limitation the claimant described at the hearing, but they are overall reflective of an exertional tolerance for sedentary work with postural and environmental limitations described above.

AR 21–22.

An ALJ may discount a claimant's symptom testimony when it is inconsistent with the claimant's general activity level. *See Molina*, 674 F.3d at 1112–13; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007). "If a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). However, the Ninth Circuit has emphasized that physical activities that do not consume a *substantial* part of a claimant's day do not necessarily contradict claims of pain:

> This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be "utterly incapacitated" in order to be disabled.

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 9

1 | *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (citing *Fair v. Bowen*, 885 F.2d 597, 603

2 | (9th Cir. 1989)).

3 |       Here, the ALJ summarized Plaintiff's function reports and recited his reported daily

4 | activities without giving any explanation as to how the activities described were inconsistent

5 | with Plaintiff's testimony at the hearing or whether the Plaintiff's physical functions would be

6 | transferable to a work setting. The ALJ noted Plaintiff's minimal contributions to childcare and

7 | housework, ability to drive, and weekly visits to his mother, but did not clarify any inconsistency

8 | with his testimony that he experiences constant pain and fatigue. As the ALJ did not explain

9 | "*which* daily activities conflicted with *which* part of [Plaintiff's] testimony," the ALJ erred. *See*

10 | *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (emphasis in original); *see also Lester v.*

11 | *Chater*, 81 F.3d 821, 834 (9th Cir. 1995), ("General findings [of credibility] are insufficient;

12 | rather, the ALJ must identify what testimony is not credible and what evidence undermines the

13 | claimant's complaints."); *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003)  ("We require

14 | the ALJ to build an accurate and logical bridge from the evidence to her conclusions so that we

15 | may afford the claimant meaningful review of the SSA's ultimate findings.").

16 |       b.   Objective Evidence

17 |       The ALJ also found that the "medical evidence also does not demonstrate a greater

18 | restriction consistent with the claimant's reports about the intensity, persistence, and limiting

19 | effects of symptoms." AR 22. After summarizing Plaintiff's treatment records from August 2014

20 | to January 2022, the ALJ wrote:

21 | This treatment record reflects objective signs in the right knee and lumbar spine on diagnostic imaging that can be reasonably be expected to cause the claimant's

22 | reported low back and radicular symptoms and right knee pain. However, the clinical signs associated with the conditions do not support finding a greater degree

23 | of limitation. Range of motion, strength, sensation, and reflexes are typically intact,

24 |

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 10

1   and straight leg raise has remained negative. The claimant has not demonstrated a

2   need for an assistive device to ambulate.

3   AR 25. He concluded that the "minimal clinical signs associated with [Plaintiff's] impairments"

4   did not support finding a greater degree of limitation than articulated in the RFC. AR 25–26.

5       When a claimant has established a medical impairment reasonably likely to be the cause

6   of alleged pain, an ALJ may not reject the claimant's testimony "solely because the degree of

7   pain alleged is not supported by objective medical evidence." *Bunnell v. Sullivan*, 947 F.2d 341,

8   346–47 (9th Cir. 1991). "Although an ALJ may use '*inconsistent* objective medical evidence in

9   the record to discount subjective symptom testimony,' the ALJ 'cannot effectively render a

10  claimant's subjective symptom testimony superfluous by demanding positive objective medical

11  evidence fully corroborating every allegation within the subjective testimony.'" *Ferguson v.*

12  *O'Malley*, 95 F.4th 1194, 1200 (9th Cir. 2024) (quoting *Smartt*, 53 F.4th at 498). "[T]he ALJ

13  must specifically identify the testimony she or he finds not to be credible and must explain what

14  evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir.

15  2001).

16      Here, the ALJ's vague references to clinical findings that do not support a greater degree

17  of limitation are insufficient to justify his conclusion that the objective evidence in the record

18  conflicts with Plaintiff's testimony about the extent of his pain. For example, the ALJ cited intact

19  range of motion as a finding that did not support Plaintiff's testimony. AR 25. Although the ALJ

20  did not specify which part of Plaintiff's testimony this finding supposedly refuted, the Court

21  observes that Plaintiff's testimony indicated he experiences reduced range of motion in his back.

22  However, within the ALJ's own summary of Plaintiff's medical records, he acknowledged

23  clinical findings that Plaintiff's range of motion in his trunk was limited at 65 to 85 percent in

24  September and November 2019, and, more recently, that Plaintiff showed stiffness and soreness

1   with twisting and bending of the back in January 2022. AR 24–25 (citing AR 423, 481, 563).

2   The ALJ did not identify any clinical findings indicating "intact" range of motion in Plaintiff's

3   back.

4          Similarly, the records cited by the ALJ that reference Plaintiff's negative straight leg raise

5   and intact strength, sensation, and reflexes do not explain how these findings relate to Plaintiff's

6   testimony. The records cited by the ALJ include a December 2014 record noting full lower

7   extremity strength; a September 2019 record noting slightly decreased trunk and left hip

8   strength; a March 2020 record showing normal muscle tone, intact extremity strength, but

9   impaired reflexes; and December 2021 and January 2022 records stating Plaintiff's "deep tendon

10  reflexes are intact." AR 43–45 (citing AR 423, 507–08, 519, 563–64). Although the ALJ is

11  responsible for resolving conflicts in the evidence, he must explain his reasoning to allow for this

12  Court's review. *See Ford*, 950 F.3d at 1149; *Brown-Hunter*, 806 F.3d at 492. The ALJ did not do

13  so here.

14                    c.   Improvement with Conservative Treatment

15         The ALJ found "the conservative and inconsistent nature of [Plaintiff's] treatment, the

16  impact of treatment on his symptoms, . . . and his inconsistent follow up with recommended

17  procedures and workup [did] not support finding a greater degree of limitation." AR 25–26. The

18  ALJ explained:

19         Physical therapy has been beneficial in terms of his pain levels. Numbness in the
           left leg was alleviated completely with loosening his belt. The claimant had a recent
20         exacerbation of back pain treated with Norco, but otherwise has not required
           narcotics for pain. He has otherwise not followed up with recommended steroid
21         injections, and he went about four years without seeking medical treatment. The
           claimant has remained at home to care for his three young children, two of whom
22         are now school-aged, which roughly corresponds to his resumption of medical
           treatment in 2020.

23  AR 25.

24

1    "[E]vidence of medical treatment successfully relieving symptoms can undermine a claim

2    of disability." *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017). An ALJ may infer that

3    a claimant's pain is less severe than reported when only routine and conservative treatment has

4    been prescribed, such as treatment with over-the-counter pain medication. *See Parra v. Astrue*,

5    481 F.3d 742, 751 (9th Cir. 2007); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

6         On this issue, the ALJ provided more specific justifications for his findings of

7    inconsistency, but these reasons are largely unsupported by the record. Although Plaintiff

8    indicated physical therapy and massage therapy were helpful for his pain levels in the moment,

9    they did not provide lasting relief. In November 2019, Plaintiff reported loosening his belt

10   alleviated the numbness in his left leg, but later records indicated the radicular symptoms had

11   returned. The ALJ wrote Plaintiff had generally "not required narcotics for pain," but Plaintiff

12   reported that the prescribed narcotic did not alleviate his pain levels and had other side effects

13   that Plaintiff could not tolerate. The ALJ noted Plaintiff went about four years without seeking

14   medical treatment, but Plaintiff testified he lost his health insurance after leaving work in 2014.

15   Also, Plaintiff's testimony indicates his family was facing housing instability during this time.

16   The ALJ did not discuss the effect of these significant factors on Plaintiff's ability to pursue

17   treatment. The ALJ does not explain the correlation between two of Plaintiff's children attaining

18   school age and Plaintiff resuming medical treatment, nor is the connection between these events

19   evident.

20        The ALJ did not provide sufficiently specific, clear, and convincing reasons for rejecting

21   Plaintiff's testimony about the severity of his symptoms. Accordingly, the ALJ erred. This error

22   was not harmless. Had the ALJ properly addressed Plaintiff's testimony, he may have included

23

24

1  additional limitations in Plaintiff's residual functional capacity ("RFC") or reached a different

2  conclusion regarding disability.

3         B.  Remaining Issues

4         Plaintiff also argues the ALJ erred in considering the medical evidence and in

5  formulating Plaintiff's RFC. The Court concludes the ALJ committed harmful error in evaluating

6  Plaintiff's subjective symptom testimony. Because Plaintiff may be able to present new evidence

7  and new testimony on remand, the ALJ must also reconsider the medical evidence on

8  remand. As the ALJ must reassess Plaintiff's RFC on remand, he must also re-evaluate the

9  findings at Step 5 to determine if there are jobs existing in significant numbers in the national

10  economy Plaintiff can perform in light of the new RFC.

11  **IV.    Conclusion**

12         Based on the foregoing reasons, the Court hereby finds that the ALJ improperly

13  concluded Plaintiff was not disabled beginning August 28, 2014. Accordingly, Defendant's

14  decision to deny benefits is reversed and this matter is remanded for further administrative

15  proceedings in accordance with the findings contained herein.

16         Dated this 22nd day of April, 2024.

17

18                                              David W. Christel
19                                              United States Magistrate Judge

20

21

22

23

24

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS
- 14